HANKIN, HANDWERKER & MAZEL, PLLC
7 Penn Plaza, Suite 904
New York, New York 10001
(212) 349-1668
Attorneys for Plainitff,
Giuseppe Guglielmi

By: _____
    Mitchell Flachner, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
GIUSEPPE GUGLIELMI,

                Plaintiff,                     Civil Action No. 06-3431(GEL)

    -against-

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

                Defendant.
-----------------------------------------------------------------X

**CIVIL ACTION - RULE 56.1 STATEMENT OF MATERIAL FACTS ON BEHALF OF GIUSEPPE GUGLIELMI IN OPPOSITION TO NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND/OR SUMMARY JUDGMENT**

Plaintiff Giuseppe Guglielmi ("Guglielmi") submits the following statement of material facts in compliance with Federal Rule of Civil Procedure 56.1:

1. By way of complaint, Guglielmi seeks benefits under an employee benefit plan (the "Plan") established and maintained by Regent Street Restaurant Corp. d/b/a Hostaria Mazzei for

1

the benefit of certain employees and proprietors. Guglielmi was a partner in Regent Street Restaurant Corp. at the time the benefit plan was established. Defendant Northwestern Mutual Life Insurance Company ("Northwestern") issued a policy of group long term disability insurance which funded the benefit plan. The Plan had an effective date of March 27, 2002. By correspondences dated October 2, 2003 and October 24, 2003, Northwestern denied Guglielmi's claim for benefits claiming that Guglielmi was not eligible for benefits as the condition which rendered him disabled was allegedly a Preexisting Condition as defined under the Plan. However, contrary to the statements of Northwestern, these denial letters do not state that Guglielmi did not satisfy the definition of "Member" because he was not Actively At Work 30 or more hours per week at any time after the Employer Effective Date of the Plan or prior to claiming a disability pursuant to the Plan. See Exhibit "A", Northwestern's October 2, 2003 letter. See Exhibit "B", Northwestern's October 24, 2003 letter. Further, the correspondence of October 2, 2003 indicates that as of March 27, 2002, Northwestern deemed Guglielmi a "Member" pursuant to the policy at issue. See Exhibit "A".

2-14.   To the extent that these paragraph's of Northwestern's Rule 56.1 Statement refers to specific provisions of the policy at issue and cites said provisions, plaintiff agrees that these are terms of the policy at issue.

15.   Guglielmi did submit an Employee Statement seeking benefits under the Plan on or about September 9, 2003. (See Exhibit "C").

2

16. In connection with the inquiry regarding "his last active day at work," the response on the Statement reads, "1/3 owner of business." *Id.* However, Northwestern never contacted Guglielmi regarding this response nor was he ever asked to clarify this response. (See Affidavit of Giuseppe Guglielmi [Guglielmi Aff.], ¶ 7).

17. In connection with the inquiry regarding the "date you became unable to work at your occupation because of a disability," the response on the statement reads, "over the last year." See Exhibit "C". However, Northwestern never contacted Guglielmi regarding this response nor was he ever asked to clarify this response. (See Guglielmi Aff., ¶ 7).

18. According to the Employee Statement, Guglielmi first consulted for the disabling injury or illness on "1-2-2002" and was hospitalized from January 2, 2002 to February 2, 2002. See Exhibit "C".

19. Northwestern submits an Employer Statement purportedly completed by a Regent Street representative in connection with Guglielmi's claim. See Exhibit "D". However, this document does not indicate which representative allegedly submitted this document as the signature is illegible.

20. The submitted Employer Statement states that the response to the inquiry regarding Guglielmi's "last day worked" is, "employee is an owner." *Id.* However, Northwestern never contacted a Regent Street representative regarding this response nor was a representative ever

3

asked to clarify this response. (See Guglielmi Aff., ¶ 7).

21.     The response on the Employer Statement regarding the date Guglielmi returned to work reads, "7-1-02." See Exhibit "D". The Employer Statement also reveals that Guglielmi work "40+" hours per week. See Exhibit "D".

22.     The Attending Physician Statement annexed to Northwestern's motion papers was completed by Harry Weinbauch, M.D.

23.     The Attending Physician Statement states that Guglielmi was diagnosed with a hemochromatosis and displayed symptoms of a stroke in December 2001. See Exhibit "E".

24-25.  The statements in these paragraphs of Northwestern's Rule 56.1 Statement, to the extent they refer to the information in the Attending Physician Statement, is not contested.

26.     The medical records submitted by Guglielmi do reveal that he was hospitalized from January 2, 2002 to January 10, 2002. See Exhibit "F".

27.     Guglielmi also filed a claim for individual disability benefits under a separate Northwestern policy and Guglielmi received a settlement in the sum of $24,000.00 in connection with said claim (See Guglielmi Aff. ¶ 9).

28. Guglielmi submitted documents to Northwestern in connection with his claim for individual disability benefits.

29. Guglielmi's individual claim form indicates that his occupation was "restaurant mnger/waiter/partner" and that he was "1/3 partner in 200+ seat restaurant. Wine buyer, waiter/general manager." This form also reveals that from July 1, 2002 until the date that Guglielmi was unable to work (after July 2003), he worked in excess of 40 hours per week. (See Exhibit "G").

30. The information contained in the individual claim form does set forth the information contained in this paragraph of Northwestern's Rule 56.1 Statement. However, an issue of fact exists as to whether Guglielmi worked part time as this document states that Guglielmi worked in excess of 40 hours per week.(See Exhibit "G").

31. An issue of fact exists as to the statements contained in this paragraph of Northwestern's Rule 56.1 Statement as this information does not appear in the document cited by Northwestern.

32. Although Guglielmi was treated for a stroke prior to the effective date of the policy at issue, specifically, March 27, 2002, Guglielmi was and is still entitled to benefits under the Plan. In its letter dated October 2, 2003, Northwestern states that "it appears that you [Guglielmi] became a Member on March 27, 2002. (See Exhibit "A"). Thus, Northwestern

5

admits that Guglielmi was, at all times, a Member under the Plan. Further, from the time Guglielmi became a Member until the time he experienced a severe decline in his abilities to work, he worked well in excess of 30 hours per week. (See Exhibit "D"; Exhibit "G"; Guglielmi Aff. ¶ 6). Hence, Guglielmi worked full time for more than one year from the time he became a Member. Accordingly, pursuant to Section 5.1 of the policy, entitled "Preexisting Condition Exclusion", Guglielmi was and is covered for the disability caused by any preexisting condition. (See Exhibit "A"; Dronker's Aff., Exhibit 1 at 16-17). Specifically, at the time Guglielmi became disabled, it is admitted that he was continuously insured under the Policy for the 12 month Exclusion Period and he was actively at work for at least one full day after the exclusion period. Thus, Gugliemli is entitled to the long term disability benefits under the Plan.

33. Guglielmi did receive a correspondence from Northwestern dated October 2, 2003 whereby Northwestern indicated that it was denying Guglielmi's claim.

34. The cited portion of the October 2, 2003 letter from Northwestern contained in this paragraph of Northwestern's Rule 56.1 Statement did appear in said correspondence.

35. The Northwestern correspondence of October 2, 2003 did advise Guglielmi of his right to a review of the determination and submit additional documentation.

36. By correspondence dated October 20, 2003, Guglielmi requested a review of Northwestern's decision to deny his claim and said correspondence clarified the information that Northwestern had concerning the claim. (See Exhibit "H").

37. Guglielmi's letter of October 20, 2003 clearly indicates that he returned to work in July 2002 and that he did not experience a decline in his ability to work until approximately one year later in July 2003. (See Exhibit "H"). Therefore, as clarified in this correspondence, Guglielmi did not become disabled until after July 2003 which was more than one year after he was continuously at work. Furthermore, Guglielmi previously informed Northwestern that he worked 40 hours per week prior to the onset of his disability. (See Exhibit "G").

38. The correspondence referred to in this paragraph of Northwester's Rule 56.1 Statement is actually dated October 24, 2003. The cited portion of the letter does in fact appear in said correspondence. However, upon review of the policy at issue, there is no definition of "partial disability" similar to the definition set forth in this correspondence. Specifically, the group policy does not define partial disability as "when your medical condition prevents you from working/earning 80% or more of your pre-disability level." Even if this is the correct definition of partial disability as set forth in the policy, Guglielmi never fell within this definition as he consistently worked 40 hours per week until his total disability after July 2003.

39. Guglielmi agrees that the cited information in this paragraph of Northwestern's Rule 56.1 Statement is contained in the letter of October 24, 2003.

7

40. In said correspondence of October 24, 2003, Northwestern provided Guglielmi with the opportunity to correct or dispute the information contained in the form he filed with Northwestern, specifically the form annexed hereto as Exhibit "G". Guglielmi corrected/explained the information in this form via his letter dated October 20, 2003. (See Exhibit "H").

41. The record does contain a correspondence from Bruno J. Gioffre, Esq. indicating that his law firm had been retained by Guglielmi with respect to his claim at issue.

42. The record contains a Northwestern correspondence dated August 25, 2004 addressed to Mr. Gioffre.

43. The record contains a correspondence dated September 13, 2004 from Mr. Gioffre.

44. The letter from, Mr. Gioffre, dated September 13, 2004 also states that the representations made by the Northwestern agent were "false and misleading and induced him to accept coverage of the subject policy." (See Exhibit "I").

45. The Northwestern correspondence dated September 20, 2004 contains the cited excerpt set forth in this paragraph of Northwestern's Rule 56.1 Statement. (See Exhibit "J").

46.   The Northwestern correspondence dated September 20, 2004 contains the cited excerpt set forth in this paragraph of Northwestern's Rule 56.1 Statement.

47.   Guglielmi was eligible to participate in the Plan as he was a "Member" as defined by the Plan as the documents submitted to Northwestern indicate that Guglielmi continuously worked in excess of 30 hours per week. Further, the correspondences sent by Northwestern indicate that Northwestern considered Guglielmi a member. With regards to the alleged preexisting disabling condition, said condition was covered pursuant to the "Exclusions and Limitations" set forth in Section 5.1 of the Plan.

## ADDITIONAL MATERIAL FACTS

48.   In addition to the long term plan at issue in the case at bar, Guglielmi also purchased from Northwestern a Personal Short Term Disability Plan, Policy Number D1453677. Both policies were purchased at the same time and both were purchased through Northwestern's agent, Robert Skelly. (See Guglielmi Aff. ¶ 3).

49.   At the time Guglielmi met with Robert Skelly to discuss these policies, Guglielmi informed Mr. Skelly of his medical condition, including the history of strokes. Guglielmi expressed his concerns to Mr. Skelly regarding the strokes and the possible effects the hostory of strokes would have on the insurance policies. Mr. Skelly assured Guglielmi that the strokes would not be a hindrance to Guglielmi making a claim and collecting on the policies should he become disabled. Guglielmi relied on Mr. Skelly's representations and as a result, Guglielmi purchased the insurance policies. (See Guglielmi Aff. ¶ 4).

50. After March 27, 2002, the effective date of the policy at issue, until the time he became disabled and unable to work, Guglielmi worked well in excess of 30 hours per week. (See Guglielmi Aff. ¶ 5). Additionally, the documents submitted to Northwestern reveal that Guglielmi worked 40 hours per week from July 2002 until the time Guglielmi became disabled after July 2003, a period of at least one year. (See Exhibit "D", Employer Statement; See Exhibit "G", Guglielmi's form submitted in connection with individual plan). Therefore, it is apparent that for a period in excess of one year after the effective date of the policy, Guglielmi was actively at work as he worked well in excess of 30 hours per week during that time period.

51. After Guglielmi submitted his claim to Northwestern and after the employer submitted its statement to Northwestern, Northwestern did not contact Guglielmi or a representative of the restaurant in order to clarify the information on the claim forms. (See Guglielmi Aff. ¶ 7).

52. Upon Guglielmi's submission of his claim forms to Northwestern, Northwestern never requested that Guglielmi undergo a medical examination regarding his disability and claim for benefits. Prior to submitting his claim forms, Guglielmi contacted Mr. Skelly regarding the claim forms. Mr. Skelly advised Guglielmi that he should complete these forms to the best of his knowledge. He further assured Guglielmi that there would be no problems collecting the benefits under the policy. (See Guglielmi Aff. ¶ 8).

53. In connection with the claim that Guglielmi submitted pursuant to his Northwestern Personal Short Term Disability Plan, Policy Number D1453677, defendant Northwestern settled the claim and paid Guglielmi approximately $24,000.00 for said claim. (See Guglielmi Aff. ¶ 9).

54. Northwestern's determination to deny benefits to Guglielmi was erroneous as he was clearly Actively At Work at least 30 hours per week after the effective date of the Plan and prior to becoming disabled. Further, the strokes that Guglielmi suffered prior to the effective date of the Plan were excluded as a preexisting condition pursuant to the express terms of the Plan.

HANKIN, HANDWERKER & MAZEL, PLLC
Attorneys for Plaintiff
Giuseppe Guglielmi

By: _____
Mitchell Flachner, Esq.

Dated: January 9, 2007
       New York, New York